UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL HAYES and MKH CONSTRUCTION, LLC,

        Plaintiffs,

v.

BUFFALO MUNICIPAL HOUSING AUTHORITY, *et al.*,

        Defendants.

**DECISION AND ORDER**
12-CV-578S

## I. INTRODUCTION

Michael Hayes and his company, MKH Construction, LLC ("MKH"), bring this action alleging that the Buffalo Municipal Housing Authority ("BMHA") and several of its employees violated various protections found in common law and in the United States Constitution. In short, Hayes, a contractor who often performed work for BMHA, alleges that BMHA unlawfully retaliated against him for reporting the illegal activity of a BMHA administrator.

BMHA now moves for partial dismissal of Hayes' complaint. Hayes also seeks to amend his complaint. Except for one aspect of that amended complaint, in which Hayes seeks to add a new cause of action, BMHA does not oppose the motion. Accordingly, aside from that cause of action, which will be discussed in further detail below, Plaintiffs are granted leave to file an amended complaint, and the motion to dismiss will be construed as against it. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). For the following reasons, the motion to dismiss is granted in

part and denied in part.

## II. BACKGROUND

**A.    Facts**[1]

For many years, Hayes, the owner and sole member of a construction company located in Grand Island, New York that focuses on roofing and siding, bid on and performed contracts offered by BMHA, a public corporation and arm of the City of Buffalo. (Second Am. Compl. ¶¶ 7, 10, 22–25.)  According to Hayes, BMHA projects were MKH's primary source of income. (Id., ¶ 24.) But sometime in 2007, John Fischer Jr., a BMHA administrator who was responsible for supervising all of BMHA's construction projects, demanded that Hayes perform free work for Fischer's friend. (Id., ¶¶ 30, 32.) Fischer went so far as to "systematically shut down all of Hayes['] contracts with BMHA . . . [hoping] to coerce Hayes to perform" the free work. (Id., ¶ 32.)  Hayes, however, reported this attempted extortion to the FBI. Eventually, Fischer pleaded guilty to federal extortion charges. (Id., ¶ 36.)

Though comprising several causes of action, Hayes' complaint is essentially straightforward: he charges that BMHA used various means to retaliate against him for reporting Fischer to the FBI. According to Hayes, BMHA:

•       "de-listed" MKH as a "Section 3 business concern," which is a favorable designation awarded to contractors, entitling them to preference in bidding (id., ¶ 40)

•       refused to consider MKH's application that it be reinstated as a "Section 3" business (id., ¶ 41)

---

[1] Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

- refused to allow MKH to hire subcontractors (id., ¶ 42)

- told other contractors not to hire MKH, and that "jobs will go a lot easier" if MKH is not hired as a sub-contractor (id., ¶ 43)

- withheld pay applications (id., ¶ 44)

- impermissibly replaced MKH as a sub-contractor on a project (id., ¶¶ 45–46)

- refused to allow MKH to participate in meetings (id., ¶ 47)

- informed Kulback's Construction, a general contractor, that it could not use MKH as a subcontractor (id., ¶ 48)

- imposed unrealistic demands on projects that MKH was involved in (id., ¶ 51)

- assigned MKH duties it was not required to perform (id., ¶¶ 53-54)

- imposed unequal conditions on MKH (id., ¶¶ 58-60), and

- enforced policies against MKH only (id., ¶¶ 61-63).

### B. Procedural History

Plaintiffs commenced this action by filing a complaint in this Court on June 20, 2012. Defendants filed the present motion to dismiss on August 30, 2012. Plaintiffs filed their motion to amend the complaint on September 27, 2012. Briefing on those motions concluded on October 9, 2012. On December 3, 2012, Hayes filed an affidavit of service for the individual defendants, whom had not yet been served.

### III. DISCUSSION

### A. Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally

not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd.

v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

## B. Defendants' Motion

Defendants seek to dismiss only parts of Plaintiffs' amended complaint. To that end, BMHA and its employees argue that Plaintiffs' claims (1) for tortious interference with business relations, (2) for *prima facia* tort, and (3) under the First Amendment, should each be dismissed.[2] Defendants further argue that Plaintiffs should not be permitted to add a new cause of action – a claim under the False Claims Act – because it would not survive a motion to dismiss.

### 1. First Amendment

Michael Hayes claims that BMHA retaliated against him for exercising his First Amendment rights, *i.e.*, reporting Fischer to the FBI. Because Hayes was a contractor working for, and attempting to bid on projects offered by, the City of Buffalo, he is protected

---

[2] Defendants also sought to dismiss this action as against the individual defendants for failure to serve those defendants in their individual capacity. But Plaintiff appears to have subsequently completed service within the time frame set out by Federal Rule of Civil Procedure 4(m). (See Docket No. 18.) This issue now appears to be moot.

Defendants also moved to strike claims for punitive damages as against BMHA. But this issue is also moot; Plaintiffs clarify in their amended complaint that they seek punitive damages against the individual defendants in their personal capacity only.

by the First Amendment. See Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr, 518 U.S. 668, 684-85, 116 S. Ct. 2342, 2352, 135 L. Ed. 2d 843 (1996) ("Independent government contractors are similar in most relevant respects to government employees . . . . We therefore conclude that the same form of balancing analysis should apply to each"); see also A.F.C. Enterprises v. N.Y. City Sch. Constr. Auth., No. 98CV4534, 2001 WL 1335010, at *17 (E.D.N.Y. Sept. 6, 2001) ("[A]n independent contractor potentially may state a viable First Amendment claim for retaliation where the contractor is denied a bid in retaliation for the exercise of his right to free speech.").

To state a retaliation-based First Amendment claim, a plaintiff must allege that (1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action. Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004).[3] To determine whether speech is constitutionally protected, courts must ask "whether the employee spoke as a citizen on a matter of public concern." Suosa v. Roque, 578 F.3d 164, 170 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First

---

[3] Although much of Defendants' motion to dismiss is dedicated to the topic, Plaintiffs have clarified that they are not seeking to state a "chilling-effect"-based First Amendment claim. (Pl.'s Br. at 4; Docket No. 14-2). Nor are they required to allege such a chilling effect. Morrison v. Johnson, 429 F.3d 48, 51-52 (2d Cir. 2005) ("A public employee alleging retaliation for having engaged in protected speech is not normally required to show that the defendants' conduct had an actual chilling effect . . . .").

Amendment cause of action based on his or her employer's reaction to the speech.'" Id. (quoting Garcetti, 547 U.S. at 418).[4]

In an argument limited to one paragraph, BMHA contends that this claim should be dismissed because (1) Hayes does not allege that he was speaking as a citizen, and (2) he was speaking for his own benefit, not on a mater of public concern.

These arguments are unavailing.

First, Hayes is not required to explicitly state he was speaking as a citizen. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era." Iqbal, 556 U.S. at 679. Rather, this Court must examine the well-pleaded factual allegations, and determine whether they "plausibly give rise to an entitlement to relief." Id.

This Court finds that Hayes has met this standard. In the wake of the seminal Supreme Court case, Pickering v. Board of Education, courts are asked to distinguish between those cases where employees were speaking as a citizens, and those cases where they were speaking as part of their official duties. 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). As the Supreme Court has more recently noted, "Employees who

---

[4]Once this threshold showing is made, "the government 'can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.'" A.F.C. Enterprises, 2001 WL 1335010 at *14 (quoting Pickering, 391 U.S. at 568). And:

> If the government has a "sufficiently strong" legitimate interest in restricting speech, that interest may outweigh the contractor's interest in free speech. Thus, the scope of a government contractor's First Amendment rights depends upon the "balance between the interests of the independent contractor, as a citizen, in commenting upon matters of public concern and interest of the State, as a contractor, in promoting the efficiency of the public services it performs through its independent contractors.

Id.
At this point, however, Defendants raise no argument with respect to this aspect of the claim. And this Court, therefore, need not address it.

make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." Garcetti, 547 U.S. at 423. But "[w]hen a public employee speaks pursuant to employment responsibilities, [] there is no relevant analogue to speech by citizens who are not government employees." Id. In this case, applying what is a "practical" test, see id., at 424, it cannot seriously be maintained that Hayes was speaking as part of his official duties as a subcontractor when he reported Fischer to the FBI. Thus, despite his technical failure to allege that "he was speaking as a citizen," Hayes' amended complaint plausibly suggests as much.

Second, while it may be that Hayes was motivated, at least in part, by personal interest, the "mere fact that [plaintiff] took a personal interest in the subject matter of the speech does not remove [it] from the protection of the First Amendment." Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir. 2003). In other words, his interests and those of the public at large "are not mutually exclusive." Golub v. City of New York, 334 F. Supp. 2d 399, 409 (S.D.N.Y. 2004). Indeed, "[w]ords can serve the speaker's personal interest yet still address a matter of concern for the community at large." Id.

Thus, on these bases alone, BHMA's motion is properly rejected. But for the sake of thoroughness, this Court will address whether Hayes' speech did in fact deal with a matter of public concern.

"Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, 131 S. Ct. 1207, 1216, 179 L. Ed. 2d 172 (2011)

(internal citations and quotation marks omitted).

Courts have had no trouble concluding that charges that a public official engaged in corruption, fraud, or extortion satisfy this test. See, e.g., Vasbinder v. Ambach, 926 F.2d 1333, 1341 (2d Cir.1991) (report to FBI of fraudulent over-billing in a federally funded program); Rookard v. Health and Hosps. Corp., 710 F.2d 41, 46–47 (2d Cir. 1983) (allegation by director of nursing of corrupt and wasteful practices at municipal hospital); Munafo v. Metro. Transp. Auth., 98-CV-4572 (ERK), 2003 WL 21799913, at *11 (E.D.N.Y. Jan. 22, 2003) (charge that public official deliberately falsified evidence "unquestionably involves a matter of public concern"); Rao v. N.Y. City Health and Hosps. Corp., 905 F. Supp. 1236, 1243 (S.D.N.Y. 1995) (deficiencies in a contractor's performance on an important public project and alleged extortion attempts by a community group); see also Garcetti, 547 U.S. at 425 ("[G]overnmental inefficiency and misconduct is a matter of considerable significance."). This Court, too, has no trouble concluding that Hayes' speech touches on a matter of public concern. BMHA's motion to dismiss Hayes' First Amendment claim is therefore denied.

### 2. Tortious Interference with Business Relations[5]

In his fifth cause of action, Hayes alleges that the individual defendants, who are employees of BMHA, tortiously interfered with Hayes' business relationship with BMHA. Relatedly, in his sixth cause of action, Hayes alleges that "Defendants," presumably both BMHA and the individual defendants, tortiously interfered with his business relationship with other contractors.

---

[5]There is no dispute that New York law applies to those causes of action that do not implicate federal law.

To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).

Initially, Hayes' fifth cause of action must be dismissed. Hayes provides no authority for the proposition that he can hold the individual defendants, who are employees of BMHA, liable for interfering with Hayes' relationship with their own employer. (He simply points out the co-defendants can be held liable under this tort.) Nonetheless, it is clear, at least in the context of a tortious-interference-with-*contract* claim, that an employee can be held liable for his interference with the plaintiff's shared employer. See Cohen v. Davis, 926 F. Supp. 399, 404–05 (S.D.N.Y. 1996). But, even assuming this principle is applicable in this context, the agent – here, the individual employees – must be acting out of self interest. See BIB Constr. Co. Inc. v. City of Poughehkeepsie, 204 A.D.2d 947, 612 N.Y.S.2d 283, 285 (3d Dep't 1994) (agent of employer may be held liable for tortious interference if "agent does not act in good faith and commits independent acts directed at another for personal pecuniary gain"). This has also been described as a requirement that the employee was acting outside the scope of his employment. Kosson v. Algaze, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228-29 (1st Dep't 1994) ("The tort of interference with an employment contract cannot lie against . . . the individual defendants, as agents of the Hospital, absent a showing that they acted outside the scope of their authority."). Plaintiffs, however, failed to allege that the employees acted in this manner. Instead, the amended

complaint is clear that the individual employees were acting at the behest of BMHA when they allegedly interfered with Plaintiffs' "business relations." In other words, Plaintiffs allege that the individual defendants were acting in the interests of BMHA, not in their own interests. This proves fatal to their claim.

Moreover, "it is well-settled that 'conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff [him]self, but at the party with which the plaintiff has or seeks to have a relationship.'" Armored Grp., LLC v. Homeland Sec. Strategies, Inc., No. 07 CV 9694 (LAP), 2009 WL 1110783, at * 2 (S.D.N.Y. Apr. 21, 2009) (quoting Carvel Corp. v. Noonan, 3 N.Y.3d 182, 191, 818 N.E.2d 1100, 1104 (2004)). But Plaintiffs do not allege the individual defendants directed any wrongful conduct toward the purported third party, BMHA. This claim is therefore dismissed.

Hayes' sixth cause of action, however, withstands the motion to dismiss. BMHA argues that this claim ought to be dismissed because Hayes failed to allege that his relationship with third-party contractors was damaged. In at least one instance, however, Hayes alleges that a BMHA employee informed a general contractor, Kulback's Construction Inc., who had just won a BMHA bid, that it could not use Hayes' company as a subcontractor. Then, apparently as a result of that demand, the contract was put up for re-bidding, and Kulback's Construction did not participate. Hayes accordingly lost the opportunity to work with this company. At this stage of the litigation, drawing all reasonable inferences in Hayes' favor, this Court finds that Hayes has adequately alleged that BMHA's actions injured his relationship with Kulback's Construction.

### 3. *Prima Facie* Tort

In New York, "[t]he elements of prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful."[6] T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp. 2d 455, 465 (E.D.N.Y. 2002) (citing Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983)). "The 'touchstone' of such a claim is 'disinterested malevolence,' meaning that 'the defendant's conduct was not only harmful, but done with the sole intent to harm.'" Lamar Adver. of Penn, LLC v. Pitman, 573 F. Supp. 2d 700, 712 (N.D.N.Y. 2008) (quoting Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990)).

BMHA argues that this claim should be dismissed because Plaintiffs failed to allege that BHMA's acts were "otherwise lawful." But while some of the allegations in Plaintiffs' complaint necessarily involve unlawful conduct, others are less definitive. For example, Plaintiffs allege that BMHA delayed processing change orders "up to 16 months" for the sole purpose of driving up Hayes' costs. This delay, in itself, does not appear to violate any state or federal law. Nor is it alleged to constitute an independent tort. Complicating matters, however, is the fact that Plaintiffs also rely on this allegation to support their equal protection claim, asserting that they were treated differently than other similarity situated

---

[6]This final element is sometimes described differently: that the conduct at issue must not be actionable under another tort theory. But these two versions of the element are interchangeable. See Ruza v. Ruza, 286 A.D. 767, 768, 146 N.Y.S.2d 808, 810 (1st Dep't 1955) (using the two formulations of the limitation interchangeably); Kenneth J. Vandevelde, The Modern Prima Facie Tort Doctrine, 79 Ky. L.J. 519, 537 n.110 (1991) ("[B]oth versions appear frequently in the New York case law with no indication that they have different meanings.").

companies. Several courts have found that in such a circumstance, a plaintiff cannot maintain a *prima-facie*-tort claim because he has not alleged that the acts were "otherwise lawful"; the plaintiff in cases such as these has, in fact, alleged just opposite. See T.S. Haulers, 190 F. Supp. 2d at 466 (dismissing *prima-facie*-tort claim because "[t]he plaintiff also asserts that the defendants' conduct was illegal, in that their actions violated its equal protection and substantive due process rights"); Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 381-82 (E.D.N.Y. 2001) ("The plaintiffs fail to allege that the defendants' conduct was otherwise lawful. In fact, the plaintiffs allege that the defendants' conduct violated their civil rights. Accordingly, the plaintiffs have failed to state a claim for *prima facie* tort . . . .").

But can Hayes plead this claim in the alternative, essentially claiming at once that the 16-month delay was both lawful and unlawful?

The courts in T.S. Haulers and Hampton Bays suggest that he cannot. But in 1975, the New York Court of Appeals indicated that he could. It found that "[a] claim for *prima facie* tort may be pled alternatively with other claims" and that "there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim." Bd. of Ed. v. Farmingdale Classroom Teachers, 38 N.Y.2d 397, 406, 343 N.E.2d 278, 285, 380 N.Y.S.2d 635, 645 (1975).

Since then, other courts seem to have expressed some doubt about this principle. See Belsky v. Lowenthal, 62 A.D.2d 319, 323 405 N.Y.S.2d 62 (1st Dep't 1978) ("It would make little sense to hold that plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit

the cause of action (absent a unique quality) to stand"); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 346-47 (S.D.N.Y. 2000) (citing Gertler v. Goodgold, 107 A.D.2d 481, 487 N.Y.S.2d 565, 572 (1st Dep't. 1985)) ("[I]t is well settled [in New York] that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort – even if the traditional tort claims turn out not to be viable.").

But the holdings of New York's highest court are controlling authority in this area of the law. See Comm'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S. Ct. 1776, 18 L. Ed. 2d 886 (1967). And that court has expressed no similar misgivings about the tort as pleaded in the alternative. In 1983, citing and affirming its earlier decision in Farmingdale, the Court of Appeals again found that "the existence of a traditional tort" does not "foreclose alternative pleading of *prima facie* tort." Burns, 59 N.Y.2d at 333 (noting, though, that ultimately "double recoveries will not be allowed"). That remains the state of the law. Thus, under Farmingdale and Burns, this Court will not dismiss Plaintiffs' prima-facie-tort claim simply because it *may* contemplate actions that are not otherwise lawful.

Nonetheless, Hayes' claim in this respect must be dismissed for a different reason. Under New York law, to adequately plead a claim for *prima facie* tort, plaintiffs must allege special damages, and "[r]ound sums without any attempt at itemization are not sufficient." Azby Brokerage, Inc. v. Allstate Ins. Co., 681 F Supp. 1084, 1088 (S.D.N.Y. 1988) (citations omitted). "Special damages must be alleged with sufficient particularity to identify actual losses." El Greco Leather Products Co. v. Shoe World, Inc., 623 F. Supp. 1038, 1045 (E.D.N.Y.1985), *aff'd in part and rev'd on other grounds*, 806 F.2d 392 (2d Cir.1986); see Gay v. Carlson, No. 89 CIV. 4757 (KMW), 1992 WL 309819, at *10 (S.D.N.Y. Oct. 15, 1992). But Hayes has failed to even attempt to itemize his special damages. Instead, he

alleges generally that "Defendants' actions resulted in special damages to plaintiffs, including loss of income, loss of profits, loss of productivity, loss of future earnings, and loss of goodwill in the business community." (Second Am. Compl., ¶ 99.) This plainly does not satisfy the second element of a *prima-facie*-tort claim. See U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 161 (2d Cir. 1996) (affirming dismissal for failure to itemize special damages); Doolittle v. Ruffo, 882 F. Supp. 1247, 1259 (N.D.N.Y. 1994) ("[P]laintiffs cannot withstand the [] Defendants' motion to dismiss because they have failed to plead, with the required particularity, the existence of special damages.").

### 4. False Claims Act

In their motion to amend their complaint, Plaintiffs seek to add an eighth cause of action, asserting a claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. Defendants oppose this aspect of the motion.

The False Claims Act "is intended to recover damages from those who defraud the federal government. It imposes liability on those who knowingly present, or cause to be presented, false or fraudulent claims for payment, or knowingly make, use, or cause to be used, false records or statements to get false claims paid or approved." United States v. Empire Educ. Corp., No. 1:11-CV-0035, 2013 WL 4068237, at *2 (N.D.N.Y. Aug. 13, 2013) (citing 31 U.S.C. § 3729(a)(1)(A),(B)).

But Plaintiffs make no factual allegations that Fischer, or anyone else, defrauded, or attempted to defraud, the federal government. Hayes simply alleges that Fischer attempted to extort him and his private company. Adding this cause of action would therefore be futile, and this aspect of Plaintiff's motion to amend his complaint is denied.

See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (leave to amend should be denied when amendment would be futile); Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (amendment is futile if it cannot withstand motion to dismiss).

## IV. CONCLUSION

Defendants have moved to dismiss parts of Plaintiffs' amended complaint. For the reasons discussed above, that motion is granted in part and denied in part. Plaintiffs' motion for leave to file an amended complaint is granted, except with respect to their proposed new claim, putatively brought under the False Claims Act.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 11) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiffs are GRANTED leave to file an amended complaint in accordance with this Decision and Order. That complaint must be filed by September 28, 2013.

SO ORDERED.

Dated:  September 23, 2013
        Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court